**UNITED STATES DSITRICT COURT**
**EASTERNDISTRICT OF KENTUCKY**
**at LONDON, KENTUCKY**
**[Filed Electronically]**

| | | |
|---|---|---|
| **LESTER TURNER, JR.** | ) | |
| **603 Shoopman Lane** | ) | |
| **Ferguson, Kentucky 42533** | ) | |
| | ) | |
| | ) | |
| **PLAINTIFF** | ) | **COMPLAINT FOR** |
| | ) | **DAMAGES AND JURY TRIAL** |
| **v.** | ) | |
| | ) | |
| **MICHAEL "WALLY" WALLACE,** | ) | |
| **Individually and in his Official Capacity** | ) | |
| **as Constable for Pulaski** | ) | |
| **County, Kentucky** | ) | |
| | ) | |
| **Serve: Michael Wallace** | ) | |
| **100 N. Main Street** | ) | |
| **Somerset, Kentucky 42501** | ) | |
| | ) | |
| **-and-** | ) | |
| | ) | |
| **Greg Speck, Pulaski County** | ) | |
| **Kentucky Sherriff** | ) | |
| **100 N. Main Street** | ) | |
| **Somerset, Kentucky 42501** | ) | |
| | ) | |
| **-and-** | ) | |
| | ) | |
| **Steve Kelly, Pulaski County** | ) | |
| **Kentucky Judge/Executive** | ) | |
| **100 N. Main Street** | ) | |
| **Somerset, Kentucky 42501** | ) | |
| | ) | |
| **-AND-** | ) | |
| | ) | |
| **GARY E. BALDOCK,** | ) | |
| **Individually and in his Official Capacity** | ) | |
| **as Constable for Pulaski** | ) | |
| **County, Kentucky** | ) | |
| | ) | |
| | ) | |

1

|                                                              |     |
|--------------------------------------------------------------|-----|
| **Serve: Gary E. Baldock**                                   | )   |
| **100 N. Main Street**                                       | )   |
| **Somerset, Kentucky 42501**                                 | )   |
|                                                              | )   |
| **-and-**                                                    | )   |
|                                                              | )   |
| **Greg Speck, Pulaski County**                               | )   |
| **Kentucky Sherriff**                                        | )   |
| **100 N. Main Street**                                       | )   |
| **Somerset, Kentucky 42501**                                 | )   |
|                                                              | )   |
| **-and-**                                                    | )   |
|                                                              | )   |
| **Steve Kelly, Pulaski County**                              | )   |
| **Kentucky Judge/Executive**                                 | )   |
| **100 N. Main Street**                                       | )   |
| **Somerset, Kentucky 42501**                                 | )   |
|                                                              | )   |
| **-AND-**                                                    | )   |
|                                                              | )   |
| **GREG SPECK, Individually and**                             | )   |
| **in his Official capacity as Pulaski County,**              | )   |
| **Kentucky Sherriff and as Chief Policy Maker**              | )   |
| **for the Pulaski County Sherriff's Department**             | )   |
|                                                              | )   |
| **Serve: Greg Speck, Pulaski County,**                       | )   |
| **Kentucky Sherriff**                                        | )   |
| **100 N. Main Street**                                       | )   |
| **Somerset, Kentucky 42501**                                 | )   |
|                                                              | )   |
| **-and-**                                                    | )   |
|                                                              | )   |
| **Steve Kelly, Pulaski County,**                             | )   |
| **Kentucky Judge/Executive**                                 | )   |
| **100 N. Main Street**                                       | )   |
| **Somerset, Kentucky 42501**                                 | )   |
|                                                              | )   |
| **DEFENDANTS**                                               | )   |

**\*\*  \*\*  \*\***

## I.      Introduction

On or about February 2, 2020 Defendants Michael "Wally" Wallace ("Wallace") and Gary

E. Baldock ("Baldock") (together the "Constable Defendants"), acting under color of law, having

2

been duly and lawfully appointed as Constables of the Commonwealth of Kentucky, Pulaski County by Defendant, Pulaski County Sherriff Greg Speck ("Speck") or his predecessor, unlawfully entered upon and into Plaintiff's premises located at 603 Shoopman Lane, in Ferguson, Kentucky on the false premise that they were conducting a law enforcement investigation. Thereafter, under false pretenses, in addition to destroying Plaintiff's real and personal property, the Constable Defendants unlawfully threatened, seized, strip searched, used excessive force upon and then wrongfully arrested, charged and falsely imprisoned Plaintiff for allegedly trafficking in methamphetamine, tamping with physical evidence, and trafficking in heroin.

The charges initiated by the Constable Defendants against Plaintiff, all of which were asserted under false pretenses and in conspiracy with each other and/or Defendant Speck, were dismissed by the Commonwealth of Kentucky on March 11, 2020 because (1) the Constable Defendants had no legal a right to enter onto Plaintiff's property; (2) the Constable Defendants fabricated probable cause as well as evidence related to the charges; (3) no evidence supported any such charges; and, (4) both Constable Defendants were, on or about February 27, 2020, charged by the Federal Government with conspiracy to commit civil rights violations against the residents of Pulaski County, Kentucky and, in the case of Defendant Gary E. Baldock, the attempted murder of a Federal Agent.

It is evident based on the federal indictments that both Constable Defendants had engaged in the type of illegal conduct asserted herein for years, against numerous residents of Pulaski County, consistent with the averments herein, with the knowledge, consent or acquiescence of the County and its Sheriff(s) or other governmental officials.

Plaintiff seeks redress and damages for the violations of his civil rights (including but not limited to his wrongful search, seizure, false arrest, false imprisonment and excessive force);

damages for his personal injuries; damages for the destruction of his property; harm to his reputation in the community; consequential damages; actual damages; special damages; punitive damages; attorney fees; recovery of costs; and, all other damages flowing from the intentional, reckless, indifferent, callous or otherwise tortious or illegal acts specified herein.

## II.    Jurisdiction and Venue

Plaintiff seeks damages from Defendants under 42 U.S.C. Section 1983 for their conscience, reckless, unconscionable, deliberate, indifferent and gross violations of the rights, privileges and immunities afforded and guaranteed to him by the Fourth and Fourteenth Amendments to the United States Constitution and all such other applicable Constitutional provisions or amendments, and federal law, as well as pendant state law claims. This Court has jurisdiction over this case and these claims pursuant to 28 U.S.C. Section 1331 and Section 1343. This Court has jurisdiction over all of the state law claims that arise out of the same case or controversy by way of the supplemental jurisdiction granted by 28 U.S.C. Section 1367. Pulaski County, Kentucky is the location of the events and/or conduct giving rise to this claim and therefore, venue is proper in this Court pursuant to 28 U.S.C. Section 1391.

## III.    Parties

1.    Plaintiff Lester Turner is an individual resident of Ferguson, Kentucky, located in Pulaski County, Kentucky, residing at the address set forth above.

2.    Defendant Greg Speck, is sued in his individual and official capacities, and is and was at all relevant times hereto the duly elected Sheriff of Pulaski County, Kentucky, and thereby assumed those law enforcement powers granted him under KRS Chapter 70, and other applicable law. Upon information and belief, as Sheriff and Chief Policy Maker for the Pulaski County Sheriff's Department, Defendant Speck appointed Defendants Wallace and/or Baldock to their

positions as Constables of Pulaski County, Kentucky thereby deputizing them and granting them the right and power to act under color of State law and/or in the alternative, he continued to retain or employ both Defendants before, during and after the events alleged in this Complaint transpired, with knowledge of their conduct as alleged herein.

3.      Defendant Wallace was at all relevant times hereto a duly appointed constable, acting under Kentucky law and in particular KRS Chapter 70, and was at all relevant times acting under color of law.

4.      Defendant Baldock was at all relevant times hereto a duly appointed constable, acting under Kentucky law and in particular KRS Chapter 70, and was at all relevant times acting under color of law.

## IV.      Nature of Defendants' Conduct

5.      On information and belief, obtained after due inquiry, Plaintiff alleges: (i) that the Defendants individually and/or in conspiracy with one another (and potentially other as yet unidentified law enforcement officers and/or other governmental entities) engaged in the conduct described herein under color of law in Pulaski County, Kentucky; (ii) that the Defendants named above (and potentially other as yet unidentified officers or governmental entities)  knowingly participated in, acquiesced in, encouraged, implicitly authorized, explicitly authorized, implicitly approved, and/or explicitly approved the conduct described herein in their individual capacities; (iii) the individual defendants named herein knowingly participated in, acquiesced in, encouraged, implicitly authorized, explicitly authorized, implicitly approved, and/or explicitly approved the conduct described herein in their official capacities as law enforcement officers of Pulaski County, Kentucky; (iv) the conduct described herein resulted from the individual illegal and corrupt conduct of Defendants Wallace and Baldock, as well as the failure of Sherriff Speck,

5

in his individual and official capacities, to (a) employ qualified persons (including Defendants Wallace and Baldock) for positions of authority; and/or (b) to properly and conscientiously train and/or supervise the conduct of such persons, including Defendants Wallace and Baldock, after their employment; and/or (c) to promulgate or enforce appropriate operating policies and rules or procedures either formally or by custom or practice to protect the Constitutional rights of Plaintiff and/or other similarly situated individuals; and/or (d) that Defendants' conduct was intentional, deliberately indifferent, objectively and subjectively unreasonable, grossly negligent, indicative of malice, and/or showed deliberate and/or reckless disregard for and indifference to rights of Plaintiff and/or the public at large, justifying an award of actual and punitive damages.

## V. Facts

6.      Plaintiff incorporates by reference and realleges each of the above statements and averments as if fully set forth herein.

7.      In the late evening of February 1, 2020, Plaintiff was alerted by his son that his home at 603 Shoopman Lane, in Ferguson, Kentucky may have been broken into.

8.      At the time, Plaintiff was staying with his sister at her home in Crab Orchard, Kentucky while recovering from neck surgery which occurred on or about January 27, 2020.

9.      Upon learning that his home was being broken into and/or that there were unknown individuals on his property, Defendant had his sister drive him to his home at 603 Shoopman Lane, in Ferguson, Kentucky to investigate the disturbance.

10.     It took approximately 50 minutes for Plaintiff and his sister to reach his home from Crab Orchard, Kentucky.

11.     Upon arriving at his home at approximately 11:40 p.m. that same evening, finding nothing particularly out of order, Plaintiff went to sleep at his home. He was, at the time, on pain medication as a result of his surgery. He therefore slept most of the next day.

12.     At approximately 7:30 p.m. on February 2, 2020 Plaintiff heard a hard knock at his door. His son pulled the curtains back to reveal Defendants Wallace and Baldock along with two other as yet unidentified officers.

13.     At the command of Defendants Wallace and Baldock Plaintiff's son opened the door to ask the officers why they were there. At this point, all four officers, including Defendants Baldock and Wallace, forcibly entered Plaintiff's home without consent, a warrant, or other legal authority.

14.     Constable Baldock then confronted Plaintiff and informed him that "you are hiding drugs or money", falsely asserting that the officers had been "watching [Plaintiff] deal drugs and traffic drugs from his home" (or words to this effect).

15.     Constable Baldock then ordered Plaintiff and his son not to leave, and patted both of them down. In doing so, Constable Baldock represented that he and the other officers, including Constable Wallace, had a warrant because, he stated, Plaintiff was believed to be a "fugitive or on the run" (or words to this effect). This was untrue.

16.     Defendant Constables Baldock and Wallace then demanded that Plaintiff produce or give them "the drugs, money and guns" and represented to Plaintiff that if he did so they would "forget this happened and would let [his son] go and leave the premises" (or words to this effect).

17.     Constable Defendants Baldock and Wallace also represented to Plaintiff that he was being charged with various crimes and that if he would "accept the charges" against him they would leave, and leave Plaintiff and his son alone.

18. At this point, without Plaintiff's consent, Constables Baldock and Wallace searched Plaintiff's home and came upon Plaintiff's tenant, Lisa Holliman. The Defendants forced her from her bedroom and outside, at which point the Constable Defendants falsely informed Plaintiff that both is son and Lisa Holliman made statements to the Constable Defendants that Plaintiff was dealing drugs.

19. Plaintiff informed the Constable Defendants that they were in error, that there were no drugs or other illegal contraband at his home and that he was not involved in the illegal conduct the Constable Defendants were accusing him of.

20. At this point, Defendant Baldock assaulted and battered Plaintiff by pushing him over and into his television and demanded that Plaintiff "cooperate". As of this time, Plaintiff had not been placed under arrest.

21. Baldock and Wallace then shut the door on Plaintiff, and Wallace stated that the officers should just "put the cuffs on the son of a bitch [referring to the Plaintiff], we got him now." At this time, Plaintiff was not under arrest.

22. Plaintiff continued to profess his innocence while the Constable Defendants and the other officers present proceeded to unlawfully search and ramshackle his home, destroying many items of personal property in the process.

23. The search by the Constable Defendants turned up no illegal drugs, or any other contraband.

24. The Constable Defendants, Baldock and Wallace, continued to attempt to coerce Plaintiff into making a false confession, using his son as leverage and promising they would "let him go" if Plaintiff confessed to illegal or criminal activity.

25.     At this point, the Constable Defendants produced a baggie of what looked like white power, which they told Plaintiff was heroin or methamphetamine. It is alleged that the Constable Defendants brought this item of contraband with them to Plaintiff's home in an effort to use it as leverage, plant it on Plaintiff, or otherwise coerce Plaintiff into confessing to crimes he was not guilty of, as they have in other cases involving other citizens in Pulaski County according to the criminal indictments filed by the United States against the Constable Defendants, as further detained below.

26.     When Plaintiff continued to protest his innocence and refused to abide by the coercive tactics of the Defendants, Defendants Baldock and Wallace ordered him into his front yard, where they strip searched him in full view of the public, at least twice.

27.     The Constables found no drugs during any such search.

28.     Finding no drugs, Constable Defendants Baldock and Wallace placed Plaintiff into their law enforcement vehicle (without reading Plaintiff his Miranda Rights). In doing so they tore the bandages from Plaintiff's neck surgery off, and ripped off his "tens" unit (a pain-relieving device). It is unclear if Plaintiff was placed under arrest at this point, as he was not read his Miranda rights not was he told that he was under arrest.

29.     Plaintiff pleaded for the return of his tens unit due to the immense pain he was in, as he was recovering from recent neck surgery, but the Constable Defendants refused.

30.     The Constable Defendants returned to Plaintiff's home where they proceeded to search the home again and destroy additional personal property.

31.     At this point, finding no contraband, the Defendants ordered Plaintiff out of their law enforcement vehicle and ordered him to "strip" again, whereupon they conducted another strip search of Plaintiff, in full view of his neighbors, his tenant and the public. The evident intent

9

of Defendants was to harass, shame and coerce Defendant into confessing to crimes he did not commit.

32.     Again, finding no contraband, the Constable Defendants returned Plaintiff, cuffed, to their law enforcement vehicle. Plaintiff sat in considerable pain, while cuffed, for another period of time, roughly equal to 40 minutes, while the Defendants and other officers conversed and searched his house again.

33.     At this point, one of the other officers, evidently at the direction of Constable Defendants Wallace and Baldock, retrieved bolt cutters from his law enforcement vehicle.

34.     That officer, at the direction of the Constable Defendants, proceeded to cut a chain lock on a shed on the property, search the shed, and destroy much of the property inside in the process, all without the consent of Plaintiff and without a warrant or probable cause.

35.     At this point, finding nothing illegal and no contraband, the Constable Defendants searched Plaintiff's person again, and falsely informed Plaintiff that "we got you now" (or words to this effect) because they allegedly found "59 grams" of methamphetamine. Again, these representations by the Constable Defendants were false.

36.     Plaintiff continued to profess his innocence and refused to consent to the coercive tactics of the Constable Defendants.

37.     Evidently frustrated, the Constable Defendants (or one of them) kicked Plaintiff's dogs, resulting in one or more of Plaintiff's animals being harmed, or otherwise later being taken from him and not returned.

38.     At this point, the Constable Defendants again cuffed Plaintiff and forced him to wait, in pain, in their vehicle for another roughly 30 minutes.

39.     The Constable Defendants then removed Plaintiff from their vehicle where they proceeded to strip search him for the fourth or fifth time, in his front yard in full view of the public. Again, as of this time, Plaintiff was not under lawful arrest.

40.     Finding no contraband, the Constable Defendants placed Plaintiff's tenant, Lisa Holliman, in their law enforcement vehicle with Plaintiff, whereupon Lisa Holliman informed Plaintiff, evidently at the instruction of or based on the coercion by the Constable Defendants, that "they said they would let us all go if you will just tell them you are guilty."

41.     Plaintiff refused, in as much as he had committed no crime.

42.     At this point, at approximately 9:30 a.m. or 10:00 a.m., Constable Defendants Baldock and Wallace formally arrested Plaintiff and took him to the Pulaski County Detention Center, where he was body scanned and placed in a "dry out" room with a bucket in case he needed to urinate or defecate.

43.     Periodically, over the course of the next few hours, the Constable Defendants would come by to examine him.

44.     Plaintiff was forcibly arrested and detained in the Pulaski County Jail, illegally and against his will, where he was body scanned several more times and where he remained for approximately 3 and ½ days, in severe pain due to his neck surgery, until his sister was able to bond him out.

45.     The terms of the bond were $10,000 full cash, and to obtain Plaintiff's release, his sister had to pledge her house, which Plaintiff must pay back.

46.     At the time he was finally released from jail, Plaintiff was in such severe pain (having received little to no medical care) that he could barely lift his arms above his head.

47.     Plaintiff later learned he had been charged by the Constable Defendants with violations of KRS 218A, among other offenses, including but not limited to first degree possession of methamphetamine; tampering with physical evidence; and, trafficking in controlled substances (the "Charges"), all on the basis of false statements made and asserted by the Constable Defendants, including but not limited to the content of Defendant Wallace's narrative report in Case No. 20-F-0048, Pulaski District Court, Commonwealth of Kentucky (the "Criminal Case").

48.     As a result of the false Charges and the wrongful institution of the Criminal Case, Plaintiff's his neck surgeon discontinued all of Plaintiff's pain medication and muscle relaxers (including oxycodone which he had prior prescribed for Plaintiff's immense pain following his recent neck surgery) and discharged him, refusing to further treat Plaintiff or follow up with his care.

49.     As a result, Plaintiff was subjected to immense, excruciating and continuous pain, which continues to this day.

50.     Plaintiff attempted to get further care, but no doctor would prescribe him any pain medication due to the false Charges asserted against him by Defendants Baldock and Wallace.

51.     Shortly thereafter, the Covid-19 epidemic commenced, making it virtually impossible for Plaintiff to obtain medical care related to his prior surgery or for his pain. It is unclear if these events have caused or will in the future cause Plaintiff additional complications or injury, but it appears likely.

52.     Shortly upon his release from jail, Plaintiff returned to his home, where he found that it had been ransacked, the doors and windows left open, with most of his property either destroyed or missing.

53.     At the same time, he learned that Constable Defendants Wallace and/or Baldock had placed a conspicuous sign in his front yard alerting the public that his home was a "drug house now closed" (or words to this effect) and that he was a drug dealer who had been "taken off the streets" (or words to this effect). The stigma associated with the facts alleged above has seriously and negatively impacted and devalued Plaintiff's home, land and property, as well as harmed his reputation in the community.

54.     Plaintiff was subsequently required to retain, and pay, a criminal defense lawyer to assist him in the defense of the false Charges in the Criminal Case.

55.     Plaintiff also was forced to pay the bond for his son, whom the Defendants also falsely arrested contemporaneously with their arrest of the Plaintiff.

56.     Subsequently, on or about March 11, 2020, the Pulaski Circuit Court dismissed all of the Charges as well as the Criminal Case against Plaintiff at the bequest of the Pulaski County Prosecutors.

57.     Plaintiff later learned from various sources, including Darryl Kegley with the Federal Bureau of Investigation ("FBI") Drug Task Force that both Defendants Wallace and Baldock had been the subjects of an ongoing criminal probe and investigation by the FBI prior to and/or at or near the time of the above alleged events.

58.     Plaintiff later learned that a federal grand jury returned indictments charging both Constable Defendants Wallace and Baldock with conspiring to threaten and intimidate citizens of Pulaski County in violation of the laws and the Constitution of the United States, including but not limited to the right to be free from the kind of unlawful search and seizure and deprivation of property without due process of law perpetrated by Defendants upon Plaintiff as herein alleged (Case No. 6:20-cr-00011-REW-HAI-1, *USA v. Wallace*, United States District Court for the

Eastern District of Kentucky) (the "Wallace Criminal Case") and Case No. 6:20-cr-00011-REW-HAI-2, *USA v. Baldock*, United States District Court for the Eastern District of Kentucky) (the "Baldock Criminal Case").

59.     Plaintiff also subsequently leaned that after the Constable Defendants' indictments in Federal Court as alleged above, rather than submit to arrest, on March 6, 2020, Defendant Baldock attempted to kill a special agent of the FBI, and was thus charged with attempted murder of a federal agent. *See*, the "Baldock Criminal Case", Count 2, among other charges.

60.     The above facts and allegations establish each and every one of the federal and state law violations and support each of the Counts set forth below, and are incorporated into each Count by reference.

## VI.     Causes of Action

### Count I
### (Violations of 42 U.S.C. Section 1983 – Fourth Amendment Search, Seizure, Wrongful Arrest, Wrongful or False Imprisonment and Excessive Force)

61.     Each of the above paragraphs are incorporated herein by reference and made a part of this Count.

62.     At all times alleged herein the Constable Defendants were acting under color of law in their capacity as law enforcement officials.

63.     Defendants' conduct as alleged above was subjectively and objectively unreasonable, in violation of fixed and certain rules applicable to Constable Defendants' Baldock and Wallace's conduct as law enforcement officers, or was otherwise intentional, reckless, deliberate, callous, wanton and/or malicious, and indicative of a total, deliberate or callous disregard of and deliberate indifference towards the Plaintiff and his constitutional rights, and the risk of harm to him as well as the public.

14

64.    As a result of the above conduct Plaintiff's property was wrongfully searched and destroyed, he was wrongfully seized, searched, and falsely arrested and imprisoned against his will, excessive force was used upon him and he sustained severe physical and emotional pain and suffering and other damages as alleged above, all in violation of his rights under the Fourth Amendment to the United States Constitution, as well as all other applicable provisions, clauses and amendments to the United States' Constitution, without due process of law all in violation of the United States Constitution as actionable pursuant to 42 U.S.C. Section 1983.

65.    Plaintiff suffered those damages asserted below as a result of said illegal conduct.

## Count II

### (Violation of 42 U.S.C. § 1983 – Failure to Supervise or Train Officers)

66.    Each of the above paragraphs are incorporated herein by reference and made a part of this Count.

67.    Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) and its progeny including but not limited to *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) Plaintiff makes the following additional allegations.

68.    At all times relevant to this complaint, Defendant Speck was the duly elected Sheriff of Pulaski County, Kentucky and was the chief policy maker for the Pulaski County Sherriff's Department.

69.    At all times alleged herein Constable Defendants Baldock and Wallace were acting at the instruction, or under the direction, control or supervision of Defendant Speck, served at his pleasure, and were empowered to act under color of state law on his behalf and on behalf of Pulaski County, Kentucky.

70.    Acting under color of law and in violation of Federal and/or Kentucky state law and/or pursuant to official or unofficial policy or custom, Defendant Sherriff Speck knowingly, recklessly, or with gross negligence or with conscience disregard for his duties and obligations as the chief policy maker for the Sherriff's Department, failed to instruct, supervise, control, deploy, investigate and/or discipline Defendants Baldock and Wallace in or as to their official duties regarding the rights, duties and privileges of the citizens of Pulaski County, Kentucky, including their rights under the Fourth and Fourteenth Amendments to the United States Constitution, and all other applicable provisions of the United States Constitution, and as a consequence thereof deprived Plaintiff of his Constitutional and statutory rights, privileges, and immunities under those applicable provisions of the United States Constitution.

71.    The conduct and failures of Pulaski County and Sherriff Speck (as well as potentially his predecessors) as alleged above was the moving force behind the constitutional violations asserted in this Complaint.

72.    As a direct and proximate cause of the these failures on the part Pulaski County acting through Defendant Sherriff Speck as chief policy maker for the Sherriff's Department, Plaintiff suffered severe physical injury, severe emotional distress and severe mental anguish, loss of property (both real and personal), loss of his reputation in the community and those other damages alleged above and below, all contrary to his constitutional and statutory rights guaranteed by the Fourth and Fourteenth Amendments and such other applicable provisions or Amendments to the United States Constitution and/or as otherwise protected by 42 U.S.C. § 1983 and the Constitution of the United States.

## Count III

### (Conspiracy to Violate or Against Civil Rights Under Federal Law)

73.    Each of the above paragraphs are incorporated herein by reference and made a part of this Count.

74.    Constable Defendants Baldock and Wallace, together and/or in concert with Defendant Peck, conspired by force, intimidation and/or threat and intended to deprive Plaintiff of his equal rights, privileges and immunities under the laws of the Commonwealth of Kentucky and the United States, including but not necessarily limited to the Kentucky and Federal Constitutions.

75.    Plaintiff is entitled to assert, and herby does assert a private cause of action for the recovery of all of his injuries and damages, as hereinabove or below alleged or demanded, occasioned by the deprivation of his rights by the co-conspirators as set forth herein, pursuant to 42 U.S.C Section 1985, 18 U.S.C. Section 241 and all other applicable federal law.

## Count IV

### (Battery Under State Law)

76.    The preceding paragraphs are hereby incorporated by reference and made part of this paragraph.

77.    Without the consent of Plaintiff Constable Defendants Baldock and Wallace, acting under color of law intentionally, harmfully, and offensively touched Plaintiff by using unwarranted, offensive, and excessive force to seize and/or subdue and falsely arrest him.

78.    As a direct and proximate result of the conduct of the Defendants Baldock and Wallace, Plaintiff suffered serious bodily and emotional injuries, together with those other injuries as alleged above.

79.    The actions of Defendants Baldock and Wallace in battering Plaintiff justify an award of punitive damages.

80.    Pulaski County, Kentucky is liable for the actions of their employees, servants and agents under the doctrine of *respondeat superior*.

## Count V

### (False Imprisonment Under State Law)

81.    The preceding paragraphs are incorporated herein by reference and made part of this Count.

82.    The conduct of Defendants Baldock and Wallace constitute the common law tort of false imprisonment, and Plaintiff is entitled to recover all damages he has sustained, as otherwise alleged herein, as a result.

83.    Pulaski County, Kentucky is liable for the actions of their employees, servants and agents under the doctrine of *respondeat superior*.

## Count VI

### (Gross Negligence/Reckless Conduct Under State Law)

84.    The preceding paragraphs are incorporated herein by reference and made part of this Count.

85.    The conduct of Constable Defendants Baldock and Wallace as herein alleged above was reckless and grossly negligent and in violation of fixed and certain rules, duties or regulations, ministerial in nature, which the Constable Defendants had a duty to follow and observe at all times hereto.

86.     Those rules include but may not necessarily be limited to rules which limit or proscribe the issuance of warrants, and/or the search, seizure, and arrest of citizens of Pulaski County, Kentucky.

87.     Constable Defendants Baldock and Wallace knowingly and/or consciously or with gross, reckless and deliberate indifference to the rights of the Plaintiff violated or breached those ministerial rules, policies or regulations applicable to the events identified and alleged above and were at a minimum grossly negligent or reckless when they violated those rules, which rules violations caused or were a substantial factor in causing the injuries and harms herein above alleged and for which damages are sought.

## Count VII

## (Defamation Under State Law)

88.     Each of the above allegations is restated as if set forth fully in this Count.

89.     The conduct of the Constable Defendants alleged above included knowingly publishing or making false statements about the Plaintiff, as alleged herein, including upon information and belief posts made on Facebook or other social media.

90.     The conduct of the Constable Defendants as outlined above constitutes defamation (both liable and slander) under Kentucky law and Plaintiff is entitled to recover all damages associated with the loss of his reputation as a result thereof.

## Count VIII

## (Sherriff is Responsible for the Acts of his Deputies)

91.     Each of the above allegations is restated as if set forth fully in this Count.

92.     Pursuant to KRS 70.045, Sherriff Speck is responsible for the actions of his appointed constables or deputies, as hereinabove alleged, and Plaintiff may recover all damages asserted herein from the Sheriff and his Office directly.

### Count IX

### (Damages)

93.     The preceding paragraphs are incorporated herein by reference and made part of this Damages prayer.

94.     As a result of the illegal conduct alleged above, Plaintiff sustained serious damages and harms is entitled to recover for each element of his harms and losses alleged above, including but not necessarily limited to:

> a.  Plaintiff's physical, mental, and emotional pain and suffering in the past, a present, and in the future;
>
> b.  Damages associated with Plaintiff's loss of freedom and his confinement due to his unlawful interrogation, strip searches, arrest, and false imprisonment;
>
> c.  Damages to Plaintiff's personal and real property, including loss of value thereof;
>
> d.  Damages for his humiliation and embarrassment;
>
> e.  Damages to his loss of reputation in the community;
>
> f.  Any out of pocket losses associated with Defendants' illegal conduct;
>
> g.  Medical expenses; and,
>
> h.  All other damages, including compensatory, consequential and special damages incurred as a result of Defendants' conduct as set forth in this Complaint.

95.     Defendants' conduct and their evident intentional violations of Plaintiff's legal, constitutional and common law rights was cruel, malicious, fraudulent, and/or evinced a total and reckless disregard for Plaintiff's rights, entitling him to recover punitive damages in order to deter such conduct in the future.

96.     Plaintiff is entitled to and does hereby further assert his right to the recovery of attorney's fees under Federal law, as well as his costs expended in this action.

**WHEREFORE**, the Plaintiff respectfully demand as follows:

1.     Judgment against the Defendants, in a sum fair and reasonably calculated to compensate the Plaintiff for all of his injuries, harms and damages as set forth above, or otherwise recoverable at law including, but not limited to, recovery for physical, mental and emotional pain and suffering in the past, present and future; loss of his personal property and the value thereof; loss and diminishment in value of his reputation in the community; humiliation and embarrassment; loss of his freedom; loss of value of his personal residence or other real property; all other out of pocket losses; and,  pre and post judgment interest and reimbursement for legal fees and expenses incurred in prosecuting this case pursuant to 42 U.S.C. § 1988 and/or other applicable law;

2.     Punitive damages;

3.     Trial by jury; and,

4.     All other relief the Court may deem appropriate, including the right to amend this Complaint.

Respectfully Submitted


COOPER & FRIEDMAN, PLLC

/s/ Hal D. Friedman
HAL D. FRIEDMAN
1448 Gardiner Lane, Suites 301-303
Louisville, Kentucky 40213
Phone (502) 459-7555
Fax (502) 451-1698
hdf@cooperandfriedman.com
*Counsel for Plaintiff*